(C.D. 4727)

JAMES LOUDON & Co., INC. *v.* UNITED STATES

Court No. 73-7-01978

(Decided December 20, 1977)

*Glad, Tuttle & White* (*Robert Glenn White* and *T. Randolph Ferguson* of counsel) for the plaintiff.

*Barbara Allen Babcock*, Assistant Attorney General (*Velta A. Melnbrencis*, trial attorney), for the defendant.

MALETZ, Judge: This action involves a shipment of 21 drums of marine cleanser or degreaser invoiced as "Petrocon" and known as "Dunall Dunrinse," which is used for cleaning the holds or bottoms of ships. The official entry papers and accompanying documents were lost by the Bureau of Customs. However, documents presented to the court by the parties reveal that the merchandise was entered at the port of San Francisco, California on or about August 12, 1966 by plaintiff James Loudon & Co., Inc., a customhouse broker, for the account of Dunn Chemical Co. under entry number 00751. The plaintiff's copy of the consumption entry lists the value of the merchandise at $3,696.00 and claims classification as American goods returned

under item 800.00 of the Tariff Schedules of the United States (TSUS) which carries a duty-free rate.

The entry was liquidated by Customs on December 12, 1967 and assessed duty of 3.5 cents per pound plus 25% ad valorem under item 405.35, TSUS, which covers—

> [p]roducts * * * chiefly used for any one or combination of the following purposes: as detergents, wetting agents, emulsifiers, dispersents, or foaming agents.

The increased duty of $1,313.55 was paid in or about April 1971.

The protest in this action was filed on February 21, 1973 against the assessment of duties under item 405.35. However, *this* protest does *not* challenge the liquidation of December 12, 1967; rather, it challenges Customs' refusal of plaintiff's request for reliquidation, which request plaintiff claims was filed on February 6, 1968 under section 520(c) of the Tariff Act of 1930, as amended (19 U.S.C. 1520(c)).[1] According to plaintiff, this request for reliquidation was not acted upon by Customs until January 12, 1973 when it was denied, thus making plaintiff's protest of February 21, 1973 timely under section 514 of the Tariff Act of 1930, as amended (19 U.S.C. 1514 (1970 ed.)).[2]

Plaintiff's claim in essence is that the imported merchandise was exported aboard the S.S. NILOS from Portland, Oregon as ships stores, which are materials used and consumed in the normal operation of a vessel. Plaintiff claims that the merchandise was later returned to the United States from Vancouver, British Columbia without having been advanced in value or improved in condition while abroad and was therefore entitled to duty-free entry as American goods returned under item 800.00, TSUS. It asserts that it filed a timely protest under section 514 of the Tariff Act of 1930, as amended, against classification by the Bureau of Customs under item 405.35 within 60 days after liquidation on December 12, 1967, which protest it alleges was lost by Customs. Also, as already noted, plaintiff contends that on February 6, 1968 it filed a request for reliquidation under section 520(c) of the Tariff Act of 1930, within 60 days of the liquidation (December 12, 1967) which request was allegedly not acted upon by Customs until January 12, 1973, following which it filed a protest on February 21, 1973.

---

[1] Section 520(c) of the Tariff Act of 1930, as amended (in effect prior to October 1, 1970), provided:

(c) Notwithstanding a valid protest was not filed, the Secretary of the Treasury may authorize a collector to reliquidate an entry to correct—

(1) a clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, appraisement, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the customs service within one year after the date of entry, appraisement, or transaction, or within sixty days after liquidation or exaction when the liquidation or exaction is made more than ten months after the date of the entry, appraisement, or transaction; * * *

[2] Section 514, as amended effective October 1, 1970, requires a protest to be filed within *90 days* after liquidation or reliquidation or refusal to reliquidate under section 520(c). Prior to October 1, 1970, section 514 required the protest to be filed within *60 days.*

Defendant presents several arguments as to why plaintiff's claim should be dismissed. First, as to the claimed lost protest, defendant argues that plaintiff did not in fact file a section 514 protest challenging the Customs' classification of the merchandise under item 405.35. Second, it argues that in any event the issue of proper classification and assessment of duties based upon the allegedly lost protest under section 514 is not before the court since the present action is based on a protest which merely challenges a refusal to reliquidate under section 520(c).

Further, with regard to plaintiff's protest filed on February 21, 1973, challenging Customs' refusal to reliquidate under section 520(c), defendant contends that plaintiff failed to comply with the statutory requirements of Section 520(c) in that it did not bring any clerical error, mistake of fact or other inadvertence not amounting to an error in the construction of a law to the attention of Customs within the statutory period of 60 days after the liquidation of December 12, 1967.[3] More particularly, defendant argues that the record shows that request for reliquidation under section 520(c) was not filed on February 6, 1968, as claimed by plaintiff, but rather was filed on August 26, 1968 and was thus untimely. Defendant further argues that the record shows that plaintiff's request for reliquidation was denied by Customs on October 24, 1968 and not January 12, 1973, as claimed by plaintiff, and that the protest of February 21, 1973 was therefore untimely. Finally, defendant insists that plaintiff failed to submit sufficient proof to substantiate its claim that the merchandise was entitled to duty-free entry under item 800.00. Hence, defendant's position with regard to the protest filed on February 21, 1973 is that Customs properly refused to reliquidate the entry under section 520(c).

## The Issues

Against this background, the following issues are presented:

1. Whether plaintiff filed a protest under section 514, contesting the liquidation of the merchandise under item 405.35, TSUS, and assessment of duty at the rate of 3.5¢ per lb. plus 25% ad valorem.

2. Whether plaintiff timely brought any clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, to Customs' attention as provided in section 520(c).

3. Whether plaintiff filed a timely protest under section 514 against the refusal to reliquidate under section 520(c).

---

[3] It will be recalled that the liquidation of December 12, 1967 took place 16 months after the entry of the merchandise on August 12, 1966. Under section 520(c), as previously noted, when a liquidation is made more than ten months after the date of entry—as it was here—a request for reliquidation based upon a clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law must be made within *60 days* after liquidation.

4. Whether any clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law occurred in the liquidation.

5. Whether plaintiff timely complied with all applicable Customs regulations for duty-free entry under TSUS item 800.00.

6. Whether Customs improperly denied plaintiff's request for reliquidation under section 520(c).

## The Record

The record consists of the testimony of two witnesses[4] and nine exhibits for the plaintiff and four witnesses[5] and seven exhibits for the defendant. From this record the following appears:

The Dunn Chemical Co. of San Francisco, California (Dunn) manufactures and distributes marine chemicals and the majority of its business is selling ships stores. It is a small operation with only three or four employees, and Mr. John W. Schrick, its president, does everything from making company decisions to making deliveries himself on occasion.

Mr. Schrick testified that the merchandise covered by the entry in question—entry number 00751—is a chemical product manufactured in San Francisco, California to the specifications of Dunn. The product—which is known as "Dunall Dunrinse"—is a degreasing material that is used for cleaning and "upgrading" the double bottoms of ships or tankers. The name "Dunall" is a trademarked one.

The events giving rise to the present controversy were recounted by Mr. Schrick as follows: In 1966, Dunn sold 35 drums of Dunall Dunrinse to the Petrocon Marine Chemical Company (Petrocon).[6] Mr. Schrick was personally involved in this sale. Mr. Peter Constantine, an agent for Petrocon,[7] was responsible for the delivery instructions on the waybill which called for a split delivery of the 35 drum shipment of Dunall Dunrinse—26 drums were ordered to be delivered to the vessel, S.S. NILOS, and 9 drums were to be delivered to the American Pacific Corp.

According to Mr. Schrick, each of the 35 drums consisted of a 55 gallon metal "one-way" drum, marked by three Dunall Dunrinse

---

[4] The two witnesses for plaintiff were John W. Schrick, president of the Dunn Chemical Co., the manufacturer and ultimate consignee of the marine cleanser, and James V. Loudon, a customhouse broker and president of the plaintiff company.

[5] The four witnesses for defendant were: Mrs. Mary Jones, who from 1966 to 1970 was a clerk-stenographer in the entry and cashier section of Customs at San Franscisco; Mrs. Delores Mann, who served as cashier clerk of Customs at San Francisco at the time the importation was entered; James J. Scott, who as supervisory import specialist for Customs at San Francisco, was the supervisor of the commodity team which handled the entry here in question; and John Thompson, import control officer for Customs at San Francisco since 1975.

[6] As evidence of this sale, plaintiff introduced a waybill from Ringsby Pacific, Ltd. (plaintiff's exhibit 5), which listed the consignee as American Pacific Corp. and which indicated that all of the drums were marked American Pacific Corp.

[7] The name "Petrocon" is a term which stands for the name Peter Constantine.

labels, two attached at points directly below the top circumference of the drums and the third pasted on top.

Mr. Schrick testified that Petrocon could not divert the delivery of the 26 drums which were ordered on the waybill to be delivered to the S.S. NILOS because it would have no control over a waybill which showed Dunn as shipper and the cargo as being "prepaid." Likewise, if the ship had sailed prior to delivery, and for that reason the delivery could not have been made, the shipping company would have contacted Dunn for notification and for further instructions. Such notification was never made.

. Mr. Schrick testified that he knew that the order was placed on board the S.S. NILOS because he never received a complaint from either Petrocon or the owners of the vessel, who paid for the material and who would have complained if a full order for which they had paid had not been delivered.

Mr. Schrick further testified that he was later advised by Mr. Constantine that 21 drums of the 26 drums had been off-loaded in Vancouver, B.C., turned over to W. Greer Tidewater Shipping,[8] and that the 21 drums would be returned to Dunn.

Mr. Schrick stated that on or about August 5, 1966, he inspected the 21 drums at the LASME warehouse in Oakland, California while the merchandise was under Customs bond control and found them to contain Dunall Dunrinse. Each of the 21 drums bore the Dunall Dunrinse label or the remnants of the said label. The labels evidenced wear and tear from exposure, but were complete enough so that Mr. Schrick was satisfied and accepted them as Dunall Dunrinse. Each of the drums, Mr. Schrick stated, was a one-way drum which didn't weather well, and was in such a condition that the merchandise was repacked in new drums, put back into stock and later sold as Dunall Dunrinse, while the used 21 drums went to the dump. Mr. Schrick said that he personally picked up and loaded the drums aboard the truck at the LASME terminal.

To prove that at the relevant time Customs had all the documents necessary to determine whether the claim for classification under item 800.00 should be allowed and that there were then no missing documents, plaintiff called as a witness Mr. James V. Loudon, the president of plaintiff James Loudon & Co., Inc. Mr. Loudon testified that Dunn retained his company, a customhouse broker, to enter the merchandise as American goods returned. Mr. Loudon emphasized that he was familiar with the entry procedures for articles entered under item 800.00, having had 25 years of experience in customs work. He stated that when there were missing documents at the time

[8] W. Greer Tidewater Shipping, U.G.G., Vancouver, B.C., referred to in the Los Angeles-Seattle Motor Express, Inc. (hereinafter LASME) freight bill (plaintiff's exhibit 7) is either a husbanding agent with a warehouse or a ship's chandler.

of entry, a card-like form and a bond were given for the missing documents.

According to Mr. Loudon, if the customhouse broker did not supply the card form and bond, he was informed by Customs of the necessity for such a bond either after entry or after documents had been presented for entry. He added that the Bureau normally indicated in the square entitled "Missing Documents," on the consumption entry (Customs Form 7501) whether or not any documents were missing. However, he stated that there was no indication of any missing documents pertaining to the importation in question in the space provided therefor on the consumption entry (plaintiff's exhibit 2). Thus, Mr. Loudon concluded that no bond was ever given for missing documents on the entry in question, i.e., entry number 00751.

Mr. Loudon further testified that whenever there are missing documents the customhouse broker is required to submit a bond as guarantee that those documents will be submitted at a later date. The customhouse broker, in turn, charges its client, the ultimate consignee, for both the deposit and the fee for its services in executing the bond. Continuing, Mr. Loudon testified that the Loudon invoice to Dunn for services relating to entry 00751 (plaintiff's exhibit 2) contained no charge for services in executing a bond. Mr. Schrick confirmed that, insofar as this entry is concerned, Dunn was never billed, nor did it ever pay any fees relative to a bond to cover missing documents. It is to be added that the consumption entry forms do not show what documents accompanied the entry papers.

On the question of whether or not a section 514 protest was filed against the liquidation of December 12, 1967, Mr. Loudon testified that although he did not personally file a protest concerning the failure to liquidate the subject entry under item 800.00, he was advised either by the manager of plaintiff Loudon's San Francisco branch office or by the manager of the import department in that office that a protest had been filed. He stated that it was a practice of his company to prepare five copies of a protest which was to be filed and when a protest was filed with the San Francisco office of Customs in 1967 and 1968, a date-stamped and numbered copy of the protest was returned to his company by Customs. He further stated that licensing regulations required the customhouse broker to maintain a copy of a protest filed with Customs as a part of its records. However, he admitted that the Loudon company files do not contain a stamped and numbered copy of any section 514 protest against the liquidation covering the entry in question, despite the fact that it was the practice of Loudon's San Francisco office to retain copies of protests filed with Customs.

With respect to whether a request for reliquidation under section 520(c) was timely filed, Mr. Loudon referred to a letter from his

company to Customs, dated *February 6, 1968*, requesting a section 520(c) review of the liquidation (plaintiff's exhibit 4). He said that he normally would have approved it since it is a form of protest, but he could not say with certainty that he had personal knowledge of either having seen this letter prior to its submission to Customs, nor could he testify as to the exact date of its submission to Customs.

It is to be noted that this letter, dated February 6, 1968, states:

Reference is made to Consumption Entry number 00751 of August 12, 1966, which was liquidated on December 12, 1967, with increased duties due in the amount of $1313.55. Subject entry was entered in the name of James Loudon & Co., Inc., for the account of Dunn Chemical Co., and covered 21 Drums of Petrocon.

We hereby request review of subject entry under Section 520(c)(1) of the regulations for the following reasons:

1) Subject entry covered merchandise which was delivered to a vessel as Ship Stores, in Portland.

2) Subject merchandise under the trade name of Petrocon is manufactured only in the United States under subject Trade Name.

3) As per Signed Copy of Customs Form 3311, signed by an Officer of Dunn Chemical Corp., they advise that this shipment was in fact delivered as ships stores to the SS NILOS at Portland, however, it was discovered that shipment was not needed by the vessel and was offloaded at the nearest North Pacific Coast Port, Vancouver, B.C. and returned to the shipper, Dunn Chemical Co.

In view of the above and the attached, Customs Form 3311 and copy of Truck Blading [sic] showing delivery to Portland for SS NILOS, we respectfully request that the subject entry be reviewed and reliquidated "As Entered" as U.S. Goods returned and subject demand for increased duties, cancelled.

With respect to this letter, it is not without significance that a Customs Form 3311 in the record is dated *August 23, 1968* and not February 6, 1968, and that although the letter states that Customs Form 3311 was attached thereto, no such attachment was appended to the letter as received in evidence as plaintiff's exhibit 4. In this circumstance, the letter requesting section 520(c) relief could scarcely have been filed on a date when the attachment had not yet been prepared and signed. Further, plaintiff presented no testimony whatsoever to show that Customs Form 3311 was incorrectly dated.

It is also to be noted that an interoffice memorandum of May 4, 1972 from the acting regional commissioner of Customs to the district director, San Francisco, states that correspondence in his office indicated that the receipt date of this February 6 letter was in fact August 26, 1968 "which would make the filing of the CF 3311 * * *

eight months after the date of the liquidation of the entry." (Defendant's exhibit C).

On another aspect, in order to show that a protest had been filed against the liquidation, Mr. Loudon referred to an interoffice memorandum from the Loudon company's San Francisco office to its Los Angeles office, dated September 3, 1970 (plaintiff's exhibit 3), which stated that an employee of Loudon had checked with "Delores Mann (head cashier)" of Customs at San Francisco and also stated that she had found a "skeleton file" which showed that entry 00751 had been protested but that her file did not have the protest number or date.

Defendant, in turn, called four witnesses to establish (1) that a section 514 protest against the liquidation had not been filed; (2) that the request for reliquidation under section 520(c) was untimely; and (3) that the protest under section 514 against the refusal to reliquidate under section 520(c) was untimely.

On the question of whether or not a section 514 protest had been filed challenging the liquidation, the defendant called Mrs. Mary Jones, who from 1966 to 1970 was a clerk-stenographer in the entry and cashier section of Customs at San Francisco. Mrs. Jones testified that she did not work in the protest section during the relevant period, but did examine the protest log for 1967 [9] and all the protest copies from January 1968 through December 1969 but did not find a protest for entry 00751.

As previously noted, Mr. Loudon made reference to an interoffice memorandum of his company, dated September 3, 1970 (plaintiff's exhibit 3), which stated that an employee of Loudon had checked with "Delores Mann (head cashier)" of Customs and also stated that she had found a "skeleton file" which showed that entry 00751 had been protested but that her file did not have the protest number or date. To counter this evidence, defendant called Mrs. Delores Mann, who served as cashier clerk in the San Francisco office of Customs at the time the importation was entered in 1967. Mrs. Mann testified that a "skeleton file" is a numbered folder containing documents left in the file after a case was sent to the United States Attorney's office for collection. She said that the skeleton file might contain a copy of the letter to the United States Attorney; a copy of the letter to the surety company; and a final notice to the importer or his representative. With regard to increased duties, she testified that the cashier of Customs would, upon liquidation, make out a bill for the amount of the increased duty and notify the importer or his representative that the increase was due. If the increase was not paid within 30 days after

---

[9] In 1967 the protest log was a ledger listing protest numbers, entry numbers, dates of entry, the importer of record and, where applicable, the date an entry was forwarded to the Customs Court and/or any other action taken. In early 1968, the local procedure changed and an actual copy of the protest with all notations as to disposition was kept in a consecutively numbered series.

liquidation, a notice was sent to the surety company and thereafter the matter was sent to the United States Attorney for collection—as was done in the present case.

Mrs. Mann further testified that in the event a protest had been filed, the entry papers—including the protest—would be in the import specialist's files and not in the cashier's files since protested cases are not sent out for collection to the United States Attorney's office.

With respect to defendant's second argument that the request for reliquidation was untimely, defendant introduced an interoffice memorandum from the acting regional commissioner of Customs to the district director, San Francisco, stating that the correspondence in his office indicated that the receipt date of plaintiff's February 6, 1968 letter requesting reliquidation under section 520(c) was in fact August 26, 1968. See defendant's exhibit C.

Defendant's third argument, it will be recalled, is that plaintiff's request for reliquidation was denied by Customs on October 24, 1968 and not January 12, 1973, as claimed by plaintiff. To support this argument, defendant called Mr. James Scott who was the supervisor of the commodity team of Customs which handled the importation here in question. He testified that he had been directed by the regional commissioner of Customs to notify the importer in writing of the district director's denial of the importer's request for reliquidation under section 520(c) and that the Loudon company had been notified by letter, dated October 24, 1968, that its request had been denied. See defendant's exhibit B–4. In addition, by letter dated March 13, 1972, Raymond B. Turner, the director, division of entry procedures and penalties, Bureau of Customs, Washington. D.C., wrote Mr. Loudon as follows (plaintiff's exhibit 1):

> This is in response to your letter of December 27, 1971, and February 1, 1972, concerning entry 00751 of August 12, 1966, filed for the account of the Dunn Chemical Company.
>
> Based on our review of the documentary evidence presented, we have concluded that the record does not confirm your claim that the merchandise was entitled to be admitted duty free.
>
> The evidence does not confirm that the 21 drums of cleaning compound for which duty free entry is being sought as American goods returned are part of the 26 drum split shipment covered by Freight Bill No. 7226661 of Ringsby-Pacific Ltd. exported on October 14, 1965. Shipping documents which might confirm the stated lading in Portland and unlading in Vancouver have not been submitted. The record, furthermore, contains conflicting evidence as to where, by what method the exportation took place, and whether the compound was ever laden aboard a vessel.
>
> In view of the above, we do not find any basis for concluding that the district director's decision was incorrect.

Also, as pertinent to this question, defendant introduced a letter, dated January 12, 1973, from William B. Lim, director, classification

and value division of the San Francisco office of Customs,. to the attorneys for plaintiff, which reads as follows (defendant's exhibit B-3):

> This is in reply to your letter of December 18, 1972, regarding San Francisco Free Entry 00751, entered August 12, 1966, in the name of James Loudon Co., Inc. a/c Dunn's Chemical Company. The entry was liquidated on December 12, 1967.
>
> The entry in question has been the subject of much correspondence between this office and Mr. James V. Loudon, president of James Loudon Co., Inc.
>
> At the request of the Bureau of Customs a narrative report and supporting documents were forwarded to the Bureau on February 16, 1972, in order that they might decide whether a refund was in order.
>
> We are enclosing a copy of the Bureau's letter of March 13, 1972, to Mr. James V. Loudon and this office now considers the matter closed.[10]

### Whether Plaintiff Filed a Protest Contesting the Liquidation

We consider first against the foregoing background whether plaintiff filed a protest under section 514 contesting the liquidation of the merchandise under item 405.35. As to this, the evidence is overwhelming that such a protest was *not* filed. Thus, Mrs. Jones of Customs testified without contradiction that the 1967 protest log of Customs and its protest copies from January 1968 through December 1968— which documents were examined by counsel for plaintiff at trial— neither referred to such a protest nor contained a copy thereof. Beyond that, Mr. Loudon testified that it was the practice of his company to prepare five copies of a protest which was to be filed and when a protest was filed with the San Francisco office of Customs in 1967 and 1968, a date-stamped and numbered copy of the protest was returned to his company by Customs. He further testified that licensing regulations required the customhouse broker to maintain a copy of a protest filed with Customs as a part of its records. However, he admitted that the Loudon company files do not contain a stamped and numbered copy of *any* section 514 protest covering the entry in question—this despite the fact that it was the practice of Loudon's San Francisco office to retain copies of protests filed with Customs and despite the fact that licensing regulations required the customhouse broker to maintain in its records a copy of any protest filed with Customs.

### Whether Plaintiff Filed a Timely Request for Reliquidation Under Section 520(c)

Previously it has been observed that prior to October 1, 1970 a request for reliquidation under section 520(c) had to be made within

---

[10] As a further witness, defendant called Mr. John Thompson, import control officer for Customs at San Francisco since 1975, who testified to the effect that various documents—which were received in evidence— were kept in the regular course of business.

60 days after liquidation when the liquidation was made more than ten months after the date of the entry. Since the entry in issue was entered on August 12, 1966 and liquidation was made on December 12, 1967, plaintiff had 60 days after December 12, 1967 to file a request for reliquidation under section 520(c). On this aspect, plaintiff emphasizes that a letter, dated *February 6, 1968*, from Loudon to Customs requesting reliquidation under section 520(c)—which letter is quoted, *supra* (plaintiff's exhibit 4)—was filed with the San Francisco office of Customs and that the request was therefore timely. Defendant, on the other hand, maintains that the request for liquidation was not filed on February 6, 1968, but rather was filed on August 26, 1968 and, hence, was untimely.

Again, the evidence is overwhelming that the request for reliquidation was not filed until the latter part of August 1968—some eight months after the liquidation—and therefore was untimely. For one thing, the Loudon company letter dated February 6, 1968, requesting reliquidation under section 520(c), makes reference to a signed copy of Customs Form 3311. However, the Customs Form 3311 in the record is dated *August 23, 1968* and not February 6, 1968. It is also to be noted that although the letter states that Customs Form 3311 was attached thereto, no such attachment was appended to the letter as received in evidence. The short of the matter is that the letter requesting section 520(c) relief could not have been filed on a date when the attached Customs Form 3311 had not yet been prepared and signed. Further, it is not without significance that plaintiff presented no testimony whatsoever to show that Customs Form 3311 was incorrectly dated.

Also bearing on this matter is an interoffice memorandum of May 4, 1972 (which also has been referred to previously) from the acting regional commissioner of Customs to the district director, San Francisco, stating that correspondence in his office indicated that the receipt date of this February 6 letter was in fact August 26, 1968.

*Whether Plaintiff Filed a Timely*
*Protest Under Section 514 Against*
*Customs' Refusal to Reliquidate*
*Under Section 520(c)*

Even assuming *arguendo* that plaintiff filed a timely request for reliquidation under section 520(c), the record is crystal clear that it did not file a timely protest under section 514 against Customs" refusal to reliquidate under section 520(c). As has been discussed previously, section 514, as amended effective October 1, 1970, requires a protest to be filed within 90 days after refusal by Customs to reliquidate under section 520(c). Pertinent then is *when* Customs refused to reliquidate the entry under the latter section. Highly relevant on this score is a letter, dated March 13, 1972 (and quoted previously), which

Mr. Raymond E. Turner, director, division of entry procedures, Bureau of Customs, wrote to Mr. Loudon. This letter, to repeat, reads as follows (plaintiff's exhibit 1):

> This is in response to your letter of December 27, 1971, and February 1, 1972, concerning entry 00751 of August 12, 1966, filed for the account of the Dunn Chemical Company.
>
> Based on our review of the documentary evidence presented, we have concluded that the record does not confirm your claim that the merchandise was entitled to be admitted duty free.
>
> The evidence does not confirm that the 21 drums of cleaning compound for which duty free entry is being sought as American goods returned are part of the 26 drum split shipment covered by Freight Bill No. 7226661 of Ringsby-Pacific Ltd. exported on October 14, 1965. Shipping documents which might confirm the stated lading in Portland and unlading in Vancouver have not been submitted. The record, furthermore, contains conflicting evidence as to where, by what method the exportation took place, and whether the compound was ever laden aboard a vessel.
>
> In view of the above, we do not find any basis for concluding that the district director's decision was incorrect.

Thus, at the very latest, on March 13, 1972—if not sooner—there was a final refusal by Customs to reliquidate the entry under section 520(c)—as is made plain by Mr. Turner's letter to Mr. Loudon. And since the protest against this refusal was not filed until February 21, 1973—almost 11 months after such refusal—it is apparent that plaintiff's protest against the refusal by Customs to reliquidate the entry under section 520(c) is time-barred.

It is quite true that on January 12, 1973, Mr. William B. Lim, director, classification and valuation division of the San Francisco office of Customs, wrote the attorneys for plaintiff the following letter (which also has been quoted previously):

> This is in reply to your letter of December 18, 1972, regarding San Francisco Free Entry 00751, entered August 12, 1966, in the name of James Loudon Co., Inc. a/c Dunn's Chemical Company. The entry was liquidated on December 12, 1967.
>
> The entry in question has been the subject of much correspondence between this office and Mr. James V. Loudon, president of James Loudon Co., Inc.
>
> At the request of the Bureau of Customs a narrative report and supporting documents were forwarded to the Bureau on February 16, 1972, in order that they might decide whether a refund was in order.
>
> We are enclosing a copy of the Bureau's letter of March 13, 1972, to Mr. James V. Loudon and this office now considers the matter closed.

In this setting, plaintiff insists that it was not until January 12, 1973—the date of Mr. Lim's letter—that its request for reliquidation

was denied by Customs, thus making its protest of February 21, 1973 timely under section 514. However, Mr. Lim's letter cannot be considered in any respect as a refusal by Customs to reliquidate. Rather, it is simply a summary of actions that had been taken by Customs in the past concerning the entry in question. Particularly significant is the last sentence in Mr. Lim's letter, stating: "We are enclosing a copy of the *Bureau's letter of March 13, 1972* to Mr. James V. Loudon [which letter has been quoted above] and this office now considers the matter closed." [Emphasis added.]

In summary, plaintiff's claim is time-barred, thus making it unnessessary to reach the merits of the case, i.e., whether or not plaintiff is entitled to relief under section 520(c). Plaintiff's claim is therefore overruled and judgment will be entered accordingly.